US009438984B1

(12) **United States Patent**
Ryann

(10) **Patent No.:** **US 9,438,984 B1**
(45) **Date of Patent:** **Sep. 6, 2016**

(54) **WEARABLE ELECTRONIC PIECES AND ORGANIZER**

(71) Applicant: **William F. Ryann**, San Antonio, TX (US)

(72) Inventor: **William F. Ryann**, San Antonio, TX (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 336 days.

(21) Appl. No.: **13/943,071**

(22) Filed: **Jul. 16, 2013**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 13/065,577, filed on Mar. 24, 2011, now abandoned, which is a continuation-in-part of application No. 12/384,871, filed on Apr. 9, 2009, now abandoned, which is a

(Continued)

(51) **Int. Cl.**
| | |
|---|---|
| *H04R 25/00* | (2006.01) |
| *H04R 1/10* | (2006.01) |
| *H04R 25/02* | (2006.01) |

(52) **U.S. Cl.**
CPC ............ *H04R 1/105* (2013.01); *H04R 1/1066* (2013.01); *H04R 1/1041* (2013.01); *H04R 25/02* (2013.01)

(58) **Field of Classification Search**
CPC .. H04R 1/105; H04R 1/1016; H04R 1/1041; H04R 1/1066; H04R 25/65; H04R 25/02; H04R 2225/021; H04R 2225/63; H04M 1/6058; H04M 1/6066; H04M 1/0258
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,827,525 A | * | 5/1989 | Hotvet ................... | H04R 25/60 381/60 |
| D334,855 S | | 4/1993 | Harrington | |
| 5,457,751 A | * | 10/1995 | Such ....................... | H04M 1/05 348/115 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 2504843 | 8/2002 |
| GB | 2 402835 | 12/2004 |
| WO | WO 2005/053352 A1 | 6/2005 |

OTHER PUBLICATIONS

U.S. Appl. No. 95/002,107, filed Aug. 2012, Ryann.

(Continued)

*Primary Examiner* — Matthew Eason

(57) **ABSTRACT**

An organizer for wearable electronic pieces or wireless communication jewelry. The pieces may be of an enhanced ergonomic form, particularly suitable for long-term wear. For example, a uniquely located actuator may be provided and each piece may be configured to distribute a significant portion of its bulk away from the isolated location of a user's ear without sacrifice to audio or communicational integrity. Further, the securing extension that accommodates the actuator and secures the piece to the user's ear may occupy less than about 0.25 inches in width behind the user's ear. Additionally, the organizer manages unique protocols of recharge for a potential plurality of pieces. Additionally, charging takes place through a support mechanism which accommodates a discrete securing extension portion of a piece in a substantially matching fashion. Further, a casing of the piece is substantially displaced from the accommodating location. A charging device of the organizer is coupled to the support mechanism such that recharge of the piece may take place through a charge region of the discrete portion of the piece. Notably, the organizer is configured in such a manner that a plurality of pieces may be secured and recharged without the need for an individually dedicated and/or wire-based recharger for each and every piece in a collection of pieces.

**20 Claims, 10 Drawing Sheets**



# US 9,438,984 B1

Page 2

## Related U.S. Application Data

continuation-in-part of application No. 11/218,860, filed on Sep. 2, 2005, now Pat. No. 7,536,150, which is a continuation-in-part of application No. 11/218,391, filed on Aug. 29, 2005, now abandoned, and a continuation-in-part of application No. 11/218,392, filed on Aug. 29, 2005, now Pat. No. 7,505,793.

(60)  Provisional application No. 61/735,174, filed on Dec. 10, 2012.

## (56)  References Cited

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D372,312 S | | 7/1996 | Lange |
| 5,606,621 A * | | 2/1997 | Reiter .................. H04R 25/456 |
| | | | 381/328 |
| 5,721,783 A | | 2/1998 | Anderson |
| 6,005,304 A | | 12/1999 | Seelig |
| 6,032,486 A | | 3/2000 | Uchin |
| 6,091,546 A | | 7/2000 | Spitzer |
| 6,091,832 A | | 7/2000 | Shurman |
| 6,424,820 B1 | | 7/2002 | Burdick |
| 6,490,362 B1 * | | 12/2002 | Clegg .................... H04R 1/083 |
| | | | 379/430 |
| 6,493,453 B1 * | | 12/2002 | Glendon ............. H04R 23/008 |
| | | | 381/322 |
| 6,603,863 B1 * | | 8/2003 | Nagayoshi ........... H04R 1/1066 |
| | | | 381/370 |
| 6,658,124 B1 | | 12/2003 | Meadows |
| 6,735,306 B1 | | 5/2004 | Heinz |
| 6,760,459 B2 | | 7/2004 | Bae |
| 6,764,133 B2 | | 7/2004 | Osato |
| 6,810,987 B1 | | 11/2004 | DeKalb |
| 6,819,772 B2 | | 11/2004 | Amae |
| 6,823,171 B1 | | 11/2004 | Kaario |
| 6,868,284 B2 | | 3/2005 | Bae |
| 6,906,495 B2 | | 6/2005 | Cheng |
| 7,013,018 B2 | | 3/2006 | Bogeskov-Jensen |
| 7,031,485 B2 | | 4/2006 | Webber |
| 7,042,196 B2 | | 5/2006 | Ka-Lai |
| 7,109,602 B2 | | 9/2006 | Nishino |
| 7,211,986 B1 | | 5/2007 | Flowerdew |
| 7,239,110 B2 | | 7/2007 | Cheng |
| 7,389,868 B2 | | 6/2008 | Lewand |
| 7,505,793 B2 * | | 3/2009 | Ryann .................... H04M 1/05 |
| | | | 381/314 |
| 7,536,150 B2 * | | 5/2009 | Ryann .................... H04M 1/05 |
| | | | 379/330 |
| 7,539,525 B2 | | 5/2009 | Kim |
| 7,948,208 B2 | | 5/2011 | Partovi |
| 8,094,850 B2 * | | 1/2012 | Feeley .................. H04R 25/60 |
| | | | 381/322 |

| | | | |
|---|---|---|---|
| 9,084,054 B2 * | | 7/2015 | Prelogar ............... H04R 1/105 |
| 2001/0002928 A1 | | 6/2001 | Cummins |
| 2003/0134666 A1 | | 7/2003 | Fletcher |
| 2003/0211871 A1 | | 11/2003 | Nassimi |
| 2004/0000848 A1 | | 1/2004 | Greiner |
| 2004/0066948 A1 | | 4/2004 | Bogeskov-Jensen |
| 2004/0198391 A1 | | 10/2004 | Sanders |
| 2004/0202339 A1 | | 10/2004 | O'Brien |
| 2004/0239874 A1 | | 12/2004 | Swab |
| 2005/0018838 A1 | | 1/2005 | Meunier |
| 2005/0046789 A1 | | 3/2005 | Jannard |
| 2005/0046790 A1 | | 3/2005 | Jannard |
| 2005/0107131 A1 * | | 5/2005 | Abramov ........... H04R 1/0258 |
| | | | 455/569.1 |
| 2005/0143140 A1 | | 6/2005 | Sanders |
| 2005/0154593 A1 | | 7/2005 | Denatale |
| 2005/0207588 A1 * | | 9/2005 | Biegelsen ............. H04R 1/403 |
| | | | 381/77 |
| 2006/0039577 A1 | | 2/2006 | Sanguino |
| 2006/0043927 A1 | | 3/2006 | Beart |
| 2006/0166705 A1 | | 7/2006 | Seshadri |
| 2007/0009120 A1 | | 1/2007 | Algazi |
| 2007/0049351 A1 * | | 3/2007 | Ryann .................. H04R 1/6066 |
| | | | 455/569.1 |
| 2007/0049362 A1 * | | 3/2007 | Ryann ........................ 455/575.2 |
| 2007/0058831 A1 * | | 3/2007 | Rie ......................... H04R 1/105 |
| | | | 381/374 |
| 2007/0141860 A1 | | 6/2007 | Hernandez |
| 2007/0149261 A1 * | | 6/2007 | Huddart ................ H04R 5/033 |
| | | | 455/575.2 |
| 2007/0159371 A1 | | 7/2007 | Song |
| 2008/0067874 A1 | | 3/2008 | Tseng |
| 2008/0234009 A1 | | 9/2008 | Zeiger |
| 2011/0170723 A1 * | | 7/2011 | Ryann ........................ A44C 7/00 |
| | | | 381/322 |
| 2014/0098983 A1 * | | 4/2014 | Clow .................... H04R 1/1091 |
| | | | 381/375 |
| 2015/0110319 A1 * | | 4/2015 | Mimbs .................. H04R 25/02 |
| | | | 381/322 |

### OTHER PUBLICATIONS

User Manual, Bluetrek ST1; 2006.
Quick Start Guide, Motorola S9; 2007.
User Manual, Motorola S9; 2007.
Quick Start Guide, Motorola S9-HD; 2008.
Motorola S10-HD Fact Sheet; 2010.
User Manual, Samsung SBH700; 2008.
Quick Start Guide, Samsung SBH700; 2008.
Spec Sheet, Samsung SBH700; 2008.
User Guide, Nokia BH-505; 2010.
User Guide, NuForce BT Sport; 2010.

* cited by examiner



*FIG. 1*



*FIG. 2A*



*FIG. 2B*



*FIG. 3A*



*FIG. 3B*



*FIG. 3C*



*FIG. 4A*



*FIG. 4B*



FIG. 5A



FIG. 5B



FIG. 5C



*FIG.  6A*



*FIG.  6B*



FIG. 7



*FIG. 8A*



*FIG. 8B*



*FIG.  9*

Case 6:22-cv-00663   Document 1-7   Filed 06/24/22   Page 12 of 22



*FIG. 10*

US 9,438,984 B1

**1**

## WEARABLE ELECTRONIC PIECES AND ORGANIZER

### BACKGROUND

Over the years, a variety of systems have been developed for accommodating conventional jewelry in an organized and/or displayed manner. For example, rather than leave necklaces, bracelets, rings and earrings strewn about a bedside table, jewelry boxes are commonly utilized for organized storage of such pieces. Jewelry boxes, display cases and the like are often configured in a manner that also provides a degree of presentation. For example, upon opening of a conventional jewelry box, a stair step presentation of different pieces may be apparent along with a mirror and other features that enhance overall display. These same features not only enhance the display of the pieces but may additionally enhance user interaction therewith. Along these lines, the noted mirror, and organized placement of different types of pieces, earrings in one location, rings in another, further aid in user interaction.

With the benefits of jewelry organization in mind, systems beyond standard jewelry boxes have also been developed. For example, depending on a user's jewelry-related priorities, hanging bags with transparent pockets, may be utilized. Thus, similar to a conventional hanging shoe storage organizer, different jewelry pieces, sunglasses, etc., may be organized in individual pockets of a hanging bag adjacent other apparel in a closet. Alternatively, more elaborate mounted jewelry cabinets may even be utilized that allow the user to open a door and simultaneously view jewelry and the user's self in a mirror when putting together a 'look' for the day. Indeed, where a maximum of open display is sought, stand-alone earring trees may even be utilized which provide an appearance similar to miniature Christmas bulbs on a bonsai tree.

In recent years the conventional concept of jewelry has evolved from the noted rings, earrings, necklaces and such into functional wearable communication devices. Fore example, Bluetooth earpieces, headsets and other 'wearables' that combine the aesthetics of jewelry with powered wireless or computing functional capacity. Indeed, an emergence in jewelry-like design and focus is particularly noticeable in the case of Bluetooth earpieces. Along these lines, a stylized fashion-oriented focus is seen in certain earpiece models available from various distributors. Even 'bedazzling' of earpieces is beginning to emerge.

Such fashionable, jewelry-like focus has also extended to other wearables, such as products which combine the concept of a necklace with that of a Bluetooth headset. Additionally, a host of different unitary bifocal/video eyewear and stereo earwear devices have been developed which include fashion-focused design. Ultimately, whatever types of wearables are selected, many of the same aesthetic considerations are accounted for by the user that are considered when selecting more conventional jewelry.

Unfortunately, unlike more conventional jewelry, organization, storage and presentation systems are largely lacking for emerging wearable devices. This may be due in part to the newer morphologies of such devices. However, it is also due to the fact that, unlike conventional jewelry, wearable electronic devices are powered. Thus, when not in use, these devices are generally plugged into a dedicated recharging power source. So, for example, while it may be possible to place a wearable in a jewelry box for sake of organization, such would sacrifice the overnight recharging thereof.

**2**

This problem may be particularly noticeable in the case of Bluetooth earpieces. These devices are smaller and potentially more numerous than other wearables in any given accessory collection. Yet, at the same time, each separate earpiece is generally afforded its own dedicated recharger. So, for example, as a user seeks to expand the earpiece collection, perhaps for sake of fashion, a jumbled mess of wires begins to grow at the bedside table, next to the jewelry box or elsewhere. Thus, in comparison to conventional jewelry, there's not only a lack of available organization, but at the same time an inherently greater amount of disorganization at the outset, due to the recharging nature of such wearable devices.

As a practical matter, this problem places the user in the position of sacrificing organization for the sake of ensuring adequate recharge of each and every wearable device following each and every wear. As indicated, this sacrifice is particularly notable in the case of Bluetooth earpieces. In fact, the resulting inherent level of disorganization may actually serve as an impediment to the user expanding such collection, thereby further sacrificing fashion in addition to organization.

### SUMMARY

An organizer is provided for accommodating a plurality of wearable communication devices or pieces such as wireless jewelry, earpieces, Bluetooth headsets and the like. The organizer includes a support mechanism for accommodating any practical number of wireless pieces of the plurality. More specifically, the support mechanism is configured to accommodate each piece at the discrete location of a securing extension thereof, the securing extension tuciljtndngvvearofthe piece by the user. Once more, the organizer is equipped with a charging device which is coupled to the support mechanism. As such, delivery of power to the piece via the extension may be achieved.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a front view of an embodiment of a wall-mounted organizer with support mechanisms and a control unit for a plurality of wearable electronic pieces.

FIG. **2**A is an enlarged view of internal multi-level support mechanisms of the organizer of FIG. **1** accommodating a plurality of electronic pieces.

FIG. **2**B is a side view of alternate embodiments of support mechanisms of the organizer of FIG. **1** accommodating individual wearable electronic pieces.

FIG. **3**A is a side view of a portion of an embodiment of a wearable communication piece in the form of a single ear earpiece for use with the organizer.

FIG. **3**B is a side view of a portion of an alternate embodiment of a wearable piece in the form of a dual ear earpiece for use with the organizer.

FIG. **3**C is a side view of a portion of another alternate embodiment of a wearable piece in the form of a neckline positioned device.

FIG. **4**A is a perspective view of an embodiment of a support mechanism for accommodating wearable pieces.

FIG. **4**B is an enlarged partially sectional view of the mechanism taken from **4**-**4** of FIG. **4**A for accommodating a securing extension of the earpiece of FIG. **3**A.

FIG. **5**A is a front sectional view of an embodiment depicting a charging device relative the support mechanism and accommodated earpiece of FIG. **3**A.

US 9,438,984 B1

**3**

FIG. **5**B is a side cross-sectional view of an alternate embodiment of support mechanism with charging device disposed therein.

FIG. **5**C is a schematic sectional view of an embodiment of the charging device of FIG. **5**B employing an inductive field for charge of the earpiece.

FIG. **6**A is a side view of an alternate embodiment of a single ear earpiece configured for electrical contact based recharge.

FIG. **6**B is a front sectional view of support mechanism and charging device for secure accommodation and electrical contact-based recharge of the earpiece of FIG. **6**A.

FIG. **7** is a flow-chart summarizing an embodiment of utilizing an organizer to accommodate a plurality of wearable wireless pieces and selectively manage recharge thereof.

FIG. **8**A is an alternate embodiment of an organizer in the form of a horizontal surface mounted unit.

FIG. **8**B is another alternate embodiment of an organizer in the form of a horizontal surface mounted unit utilizing open-ended support mechanisms.

FIG. **9** is a front view of an embodiment of an electronic piece such as that of the embodiments of FIGS. **2**A, **3**A, **6**A, **8**A and others and depicted worn by a user.

FIG. **10** is a side view of the wearable electronic piece of FIG. **9** as worn by the user.

DETAILED DESCRIPTION

Embodiments of organizers to accommodate a plurality of wearable electronic pieces are detailed herein. These pieces may be wireless, communicative or other types of pieces which are described with reference to certain types of organizational displays. More specifically, wall or horizontal mounted displays are detailed which utilize certain types of support mechanisms and charge/recharging devices, namely of an inductive variety. By the same token, the types of wearable pieces depicted are largely of the wireless earpiece variety. However, alternate, non-inductive forms of charging may be utilized as well as different types of wearable devices or "wireless jewelry pieces" aside from earpieces and/or headsets.

Regardless of the specific recharge—wearable combination, embodiments detailed herein include a support mechanism that accommodates and interfaces a discrete portion of the wearable for sake of power delivery thereto. Furthermore, a protocol of acceptability and organization for charge/recharge management of a variety of different pieces may be uniquely employed. Additionally, each w earable may include a component casing that is substantially displaced from the accommodated support mechanism. Thus, with respect to casing electronics, a heat conscious recharge system may be provided in addition to ergonomically superior wearable pieces as detailed herein.

Referring now to FIG. **1**, a front view of an embodiment of a wall-mounted organizer **100** is shown. Though, in other embodiments, the organizer **100** need not be of a wall-mounted configuration. The organizer **100** includes a variety of multi-level support mechanisms **101-104**, **106** as detailed further below. Again, however, a multi-level configuration is not required, although such may be desirable for sake of presenting an organized manner of display. Regardless, the support mechanisms **101-104**, **106** are provided for securely accommodating a plurality of wearable electronic pieces (e.g. **276**) for sake of the noted display. Furthermore, a control unit **150** may be provided for sake of governing charge/recharge to any individually accommodated pieces by way of the indicated mechanisms **101-104**, **106**. For

**4**

example, note such accommodated pieces **276**, **281**, **286**, **295**, **215**, **216** at FIGS. **2**A and **2**B detailed further below.

Power to the organizer **100** and control unit **150** may be provided through an electrical cord **155** running to a conventional wall socket or other suitable power source. The organizer **100** is also of a configuration for enhancing overall presentation and user accessibility. For example, in addition to the multi-level display, the organizer **100** may make use of cabinet doors **125**, internal mirrors **175**, drawers, pockets, and a variety of additional organizational, aesthetic or other appropriate enhancing features. Indeed, the organizer **100** may serve as an advantageous organizational display system for wearable pieces irrespective of accompanying recharge.

Continuing with reference to FIG. **1**, with added reference to FIGS. **2**A-**2**B, the control unit **150** may be utilized to govern a predetermined programmable protocol for recharge of pieces at different locations of the organizer **100**. More specifically, the unit **150** may include a processor to support communications and analysis relative different accommodated pieces. For example, in one embodiment the organizer **100** may be configured to supply power only when a piece is accommodated at a support mechanism **101-104**, **106**. Thus, as opposed to switching the organizer 'on' and 'off', a conventional strain gauge, sensor, or other suitable detection technique may be incorporated into each mechanism **101-104**, **106**.

In this manner, information indicative of detection of a piece may be relayed to the control unit **150** which may responsively govern the powering up of the organizer **100**. Such relay of information may be supported by electrical communicative capacity inherent through the mechanisms **101-104**, **106** as detailed further below, or through Bluetooth or other wireless protocol with accommodated pieces. Furthermore, such powering up may relate to powering up of the entire organizer **100** or powering up on a more select basis. For example, in one embodiment, detection as described may result in powering up of select mechanisms **101-104**, **106** whereat pieces are detectably accommodated, or even powering up just the select locations **275**, **280** of mechanisms **101-104**, **106** when pieces are accommodated thereat (see FIG. **2**A).

In addition to detection for sake of recharge generally, the control unit **150** may also be utilized on a more specific basis for determination of compatibility in governing recharge. So, for example, through supported communications with a microprocessor or suitable identifier of each piece, a processor of the unit **150** may be used to confirm compatibility in advance of any recharge. These communications may take place electrically over the mechanisms **101-104**, **106** or via Bluetooth or other wireless protocol as noted above. Thus, where a piece is not compatible with the organizer **100** in terms of recharge, yet placed at a location of a mechanism **101-104**, **106**, say for sake of organization, the unit **150** may avoid directing a supply of recharge current thereto. Stated another way, a failure of powerable pairing may result between the unit **150**/organizer **100** and the piece location.

This type of regulation may take a variety of different forms. For example, in one embodiment, recharge may be prevented in this manner on a piece by piece or even a mechanism by mechanism basis. That is to say, whenever an incompatible piece is detected on a given mechanism **101-104**, **106**, current supply to that particular mechanism alone will be avoided. Of course, any number of alternate techniques may be employed through the control unit **150** in governing and regulating the recharge. Once more, governing recharge in this manner may be employed as a supplement or alternative to utilizing a mechanical key-like match-

**5**

ing between piece and mechanism **101-104**, **106** for sake of recharge as detailed further below. A variety of different management techniques for recharge are detailed further hereinbelow, in particular with reference to the flow-chart of FIG. **7**.

Referring now to FIGS. **2**A and **2**B, selectively enlarged views the overall organizer **100** and internal support mechanisms **101-106** are depicted in conjunction with a manner of accommodating a plurality of electronic pieces **276**, **281**, **286**, **295**, **215**, **216** thereat. That is, as opposed to underlying piece (FIGS. **3**A-**3**C) or engagement (FIGS. **4**A-**4**B) morphologies or even potential recharge techniques (FIGS. **5**A-**5**C, **6**A-**6**B), FIGS. **2**A-**2**B, depict an overview of the organizer **100**, as might be seen from a day to day user's perspective.

Specifically, FIG. **2**A depicts the main multi-level rod-shaped support mechanisms **101-104** of FIG. **1** accommodating a plurality of certain pieces **276**, **281**, **286**, **295**. Alternatively, FIG. **2**B depicts a side view of different hook-shaped embodiments of support mechanisms **105**, **106** accommodating certain wearable electronic pieces **215**, **216** on a more individual basis. More particularly, the hook-shaped embodiments of FIG. **2**B include a straight, peg-like support mechanism **105**, and another mechanism **106** of a more traditionally curved nature.

In addition to an organized display, the positioning of pieces **276**, **281**, **286**, **295**, **215**, **216** at the organizer **100** may also provide a strategically convenient platform for charging. That is, the organizer **100** is configured for organized retention and display of stored pieces when not being worn by a user. So, for example, the organizer **100** and wearable piece embodiments herein are largely drawn to inductive techniques for recharging. Though exceptions such as the embodiments of FIGS. **6**A-**6**B and others are available. Nevertheless for inductive recharge embodiments, depending on standard degrees of inductive efficiencies, the potential exists for a considerable amount of heat buildup at recharge locations. Thus, in contrast to more traditional "on-ear" Bluetooth casing configurations, certain embodiments of the wearable pieces **276**, **281**, **286**, **295** may be of a displacing configuration with heat sensitive components in mind. So, for example, a component casing **277**, **296** may be translationally displaced a distance (d) to a heat-safe location relative its own extension **210**, **220** and charge region **305**, **315** thereof (see FIGS. **3**A-**3**B).

As a result of such casing displacement, from a day to day user's perspective, the wearable piece collection may take on the appearance of traditional jewelry-types such as dangling earrings **281**, pendant casing necklaces **216** and the like. With added reference to FIGS. **9** and **10**, in conjunction with this effect, a component casing **277**, which may constitute the bulkiest portion of a given piece, may be substantially displaced for sake of ergonomics, such as to a location between an ear of the user **975** and the user's shoulders or neckline (at the base of the user's neck) when worn. Notice this location with reference to a collar **979** of the user's upper garment **970** (again see FIGS. **9** and **10**). The casing **277** may be of a bulk for housing a plurality of electronic components for a given piece **276**. Thus, the bulk of the casing **277** is likely to exceed that of a securing extension **210** and distancing element **279**, detailed at length below. See also U.S. application Ser. Nos. 13/065,577, 12/384,871, 11/218,860, 11/218,392 and 11/218,391, each of which are incorporated by reference herein, in their entireties.

Along these lines, the pieces (e.g. **276**, **295**) are constructed of the noted casing **277**, **296** and a securing exten-

**6**

sion **210**, **220**, among various other portions. Further, the casing **277** and extension **210** of a given piece **276** may be of stable unitary form construction to ensure safeguarding of electronic components within the casing **277** at all times. Therefore, in certain embodiments, unlike a conventional hinged or collapsible Bluetooth earpiece, or one of on-ear casing design, the user friendly organizer **100** may be of enhanced practicality. That is, the hook-like extension **210** with displaced casing **277**, yet overall refined unitary piece **276**, is uniquely hung and stably sustained at a mechanism **101** thereof.

Continuing with reference to FIGS. **2**A and **3**A-**3**C (with some added reference to FIG. **5**A), such heat conscious pieces **276**, **295** may utilize securing extensions **210**, **220**, **230** for sake of placement as indicated. Further, the extensions **210**, **220**, **230** may house an internal inductor **500** at charge regions thereof, in a manner distanced from component casings **277**, **296**, **226** of the pieces **276**, **295**, **216**. A given component casing **277** may be configured for housing wireless electronics such as a microprocessor, transceiver, microphone, battery, etc., some of which may be heat sensitive in nature. In particular, the microphone may be a focused microphone and the battery well-suited for inductive recharge as detailed below. However, in addition to incorporating conventional insulating materials, the casing **277** may be displaced or distanced (d) from the heat prone location of the charge region **305** and inductor **500**, or the center of the mechanism **101** generally, as alluded to above. Thus, a manner of heat sensitive safeguarding may be provided to such components. For example, in one embodiment, this distance (d) is over 1.5 inches between the charge region **305** and casing **277**, preferably two or more inches.

In another manner of examining the earpiece **276**, the length of a casing support or distancing element **279**, between the extension **210** and the casing **277**, may be over about 0.25 inches so as to ensure adequate safeguarding for noted heat sensitive components when placed at the organizer **100** and, in certain embodiments, under about 5 inches for positioning of the casing **277** between the user's ear and neckline when worn as noted hereinabove. Regardless, a heat safe (or 'safer') distance between the casing **277** and the inductor **500** (or extension **210**) is ensured, in contrast to pieces lacking such component casing displacement. Utilization of casing insulation and displacement in this manner allows for more practical use of an organizer **100** of such increased user friendliness. That is, readily manipulatable and display enhancing, exposed support mechanisms **101-106** may be rendered a practical recharging platform option when combined with wearables of such displacing morphologies.

Continuing with specific reference to FIG. **2**A, a portion of an organizer **100** is shown utilizing multiple support mechanisms **101-104**, for example, at a back wall, door, or other suitable location of a jewelry-like, wall-mountable case as depicted in FIG. **1**. The mechanisms **101-104** allow for a plurality of different wearable communication pieces **276**, **281**, **286**, **295** to be accommodated of varying styles and types. In the embodiment shown, this may include earpieces or 'ear wear' with displaced casings resembling single ear earrings **276**, **281**, **286** or unitary dual ear headsets **295**. Regardless, an organized jewelry-like display of wearable communication pieces is provided as noted above, that is heretofore unseen. Once more, as detailed below, simultaneous charging of the pieces may be achieved without the requirement of their individual removal from the organizer **100** for pairing to a dedicated charger.

US 9,438,984 B1

7

With particular reference to FIG. 2B, side views of alternate embodiments of support mechanisms 105, 106 are depicted. That is, as opposed to rod-shaped mechanisms 101-104 as described above, hook-shaped support mechanisms 105, 106 may be utilized with the organizer 100. Such shapes may serve as a platform tailored for accommodating wearable pieces more on an individual basis as opposed to say, accommodating several pieces along a single rod-shaped support mechanism 101 as in FIG. 2A. Nevertheless, such support mechanisms 105, 106 may be incorporated into the organizer 100 to further aid in supporting a plurality of wearable pieces (see FIG. 1). Further, these mechanisms 105, 106 may again serve as platforms for charging of such pieces so as to avoid the requirement of their individual removal and pairing to a dedicated charger.

Continuing with reference to FIG. 2B, support mechanisms may include straight, peg-like hooks 105 similar to pegs of a board for accommodating keys at a valet, garage, behind a concierge desk, etc. More traditional curved hooks 106 may also serve as support mechanisms with shapes similar to those commonly utilized to hang hats and other apparel. Indeed, along these lines, eye hook shapes and others may also be utilized. As noted above, hook-shaped support mechanisms 105, 106 may be particularly well suited for accommodating pieces of the organizer 100 on an individual basis.

Given that hook-shaped support mechanisms 105, 106 may be naturally open-ended, wearable pieces utilizing securing extensions that form a closed-loop when worn by a user may be well suited for placement at such mechanisms 105, 106 of an organizer 100. Indeed, as shown, pieces configured for wrist 215 or neck 216 wear during use may be hung on hook-shaped support mechanisms 105, 106 while leaving their securing extension straps closed. Of course, such placement is a matter of user choice in that individualized placement for such pieces is not required. For example, wrist 215 or neck 216 worn pieces may be opened and placed at a rod-shaped mechanism 101, whether reclosed or otherwise. Indeed, a normally closed-loop piece 215, 216 (during user wear) may even be opened and yet placed at a hook-shaped support mechanism 105, 106. For example, a strap of a wrist piece 215 may be secured to a peg-type hook 105 with a buckle or fastener thereof, particularly where a conformal or matching interface is achieved as detailed further below. Further, so long as this discrete portion of the piece 215 includes at least an underlying conductive capacity as detailed below, recharge thereof may be achieved by way of the organizer 100.

Referring now to FIGS. 3A-3C side views of wearable communication piece 276, 295, 216 portions are depicted. More specifically, securing extensions 210, 220, 230 of single ear earpiece 276, dual ear earpiece 295, and neckwear 216 embodiment pieces are shown. However, with added reference to FIGS. 1 and 2A-2B, regardless of the specific piece morphology, each support mechanism 101-106 is configured to accommodate a wearable piece 276, 295, 216 in a direct manner at the discrete securing extension 210, 220, 230 thereof. Furthermore, the securing extension 210, 220, 230 doubles as an aid in securing the piece to a user at the ear, neck, wrist, etc., as detailed further herein. That is, when not being worn by a user, this same securing extension 210, 220, 230 is free and able to aid in supporting of the piece 276, 295, 216 to a support mechanism 101-106. Added degrees of display and organization are provided through such discrete portion accommodation at support mechanisms 101-106 of an organizer 100 in contrast to, for example, placement of entire pieces within a drawer.

8

As indicated above, FIGS. 3A and 3B depict portions of pieces 276, 295 which are configured for placement at a user's ear when being worn and used. Thus, the securing extensions 210, 220 are ear supports of a slim hook-like nature for positioning behind a user's ear (e.g. at the concha between the ear 977 and head 973 of the user 975 as shown in FIGS. 9 and 10). Alternatively, FIG. 3C depicts a portion of a piece 216 that is configured for placement around a neck of a user when being worn. Thus, the extension 230 is of a strap, cord, or other suitable wraparound variety.

With specific reference to FIG. 3A, and added reference to FIG. 2A, the securing extension 210 of the wearable communication piece 276 is highlighted. The extension 210 may serve as a platform to accommodate a host of features. These may include a speaker 307 or speaker assembly and actuator 303 emerging from a front thereof for earpiece functionality and ease of user manipulation, respectively. That is, unlike traditional earpieces, the actuator 303 is uniquely disassociated from the component casing 277 and electronic components it communicates with therein as detailed further below. Instead, it is strategically located as indicated to serve as the physically controlling interface for the user. With added reference to FIG. 8A, in a particularly ergonomically enhanced form, it is apparent that along the extension 210, the speaker 307 is accommodated from a front-most location as noted, with the distancing element 279 at the back thereof and the actuator 303 located therebetween (and toward the front of the extension 210 as noted above). Further, the component casing 277 and other portions of the piece 276 may also be provided apart from the extension 210. Nevertheless, with focus drawn to the securing extension 210, a charge region 305 is depicted which is located at the underside of the extension 210. Thus, the earpiece 276 may be well suited for recharging in conjunction with its 'hooked' placement at the support mechanism 101 of the organizer 100. That is to say, as the piece 276 is removed from wear and stored at the organizer 100, akin to conventional jewelry, a recharge thereof may begin to take place as detailed further below.

The charge regions 305, 315, 335 are configured to support inductive coupling with the support mechanism 101 for sake of providing a recharge to the pieces 276, 295, 216. With brief added reference to FIG. 5A, coil-based inductors 400, 500 internal to the mechanism 101 and piece 276, respectively, may be utilized in this manner. At the same time, rechargeable batteries and other electronic components may be housed at bulkier and ergonomically superior, heat-safe casing locations. However, the charge regions 305, 315, 335 of the embodiments shown are located at the extensions 210, 220, 230. Such locations may be more practical given the inherently securable nature of the extensions 210, 220, 230. Yet, at the same time, during recharge, the pieces 276, 295, 216 are not being worn by the user. Thus, the securable nature of the extensions 210, 220, 230 may now be taken advantage of for the sake of organized and secured storage, and without sacrifice to the ability to attain recharge.

With particular reference to FIG. 3B, the piece 295 is of a dual-ear headset variety. That is, one securing extension 220 is depicted accommodating an actuator 317 and speaker 319 for a user's ear. However, the assembly may include a duplicate of these same features corresponding to another ear of a user (see FIG. 2A). Thus, as noted, a dual ear, headset version of the piece 295 may be provided for example, to provide stereo quality sound. Of course, where properly configured, entirely separate but multiple single-ear pieces 276 may be simultaneously worn as an option for attaining stereo sound. Regardless, in the embodiment of

**9**

FIG. **3**B, the above described charge region(s) **315** may again be strategically located at the underside of the extension **220** to advance charging in conjunction with organized storage when in non-use by a user.

The embodiment of FIG. **3**B is of a headset variety as noted above. However, dual-ear securing extensions **220** may also be utilized in other types of wearable pieces. For example, emerging photo or video eyewear, may make use of the depicted dual-ear extensions **220**, as well as an extension in the form of a nose bridge. Once more, the availability of multiple extensions **220** may provide the advantage of multiple regions **315** as shown (and at a nose bridge in the case of eyewear). Thus, the degree of precision in managing recharge may be enhanced along with the rate of recharge, either of which may be particularly beneficial for such larger dual-ear devices (e.g. which may be of greater overall power and/or management requirements). Indeed, with added reference to FIG. **2**A, in one embodiment of the organizer **100**, a given support mechanism **104** may be tailored to such higher power device recharging. Along these lines, different support mechanisms **101**, **104** may be morphologically tailored to substantially match the particular underside curvatures of differing form piece types. For example, one mechanism **101** may be configured to morphologically match certain securing extensions **210** of single ear piece types **276** and another **104** may be configured to match securing extensions **220** of others **295** (or a nose bridge as noted above). Morphological matching in this manner may be employed so as to increase surface interfacing between the mechanism **101**, **104** and the underside of the corresponding extension **210**, **220**. Thus, enhanced security and power transfer may be achieved as detailed further below with reference to, for example, with reference to FIG. **4**B.

With particular reference Co FIGS. **2**B and **3**C, a portion of a piece **216** is depicted which may be positioned at least partially at a neckline of a user during use. For example, the piece **216** may include a component casing which resembles a pendant in a manner that resembles a necklace when worn. Of course, the piece **216** also includes a securing extension **230** which resembles the strap, chain, cord, etc. of a conventional necklace. Yet, this extension **230** not only serves to secure the piece **216** in terms of wear on the user, but also may aid in positioning the piece **216** at a support mechanism **106** when not being worn or used.

In the embodiment of FIG. **3**C, a charge region **335** of the extension **230**, roughly opposite the suspended casing/pendant as shown in FIG. **2**B, may be provided that is particularly configured to support electrical recharge. In one embodiment, the region **335** may include a less-flexible discrete morphological curvature akin to a single sawtooth hanger or indentation. Thus, enhanced security or maximized interfacing with the mechanism **106** thereat may be achieved.

Continuing with reference to FIGS. **3**A-**3**C, the securing extensions **210**, **220**, **230** and/or regions **305**, **315**, **335** may include outer layers of polymer material or other substantially sweat-proof, water resistant materials. For example, in embodiments where inductive recharge is to be utilized, the avoidance of more conventional metal-based contacts for interfacing support mechanisms **101**-**106** may advantageous (see FIGS. **2**A-**2**B). That is, as with bathroom electrical appliances such as electric tooth and facial brushes, pieces **276**, **295**, **216** are often exposed to moisture and debris that may affect a more traditional direct metal-based electronic coupling. Thus, while not necessarily in a bathroom setting, even brief wear by the user is likely to expose such pieces

**10**

**276**, **295**, **216** to the user's own perspiration and accumulated skin particulate. This may especially be the case where the pieces **276**, **295**, **216** are similar to those depicted, which, per design, are likely to contact a user's skin directly during wear. Once more, such pieces **276**, **295**, **216** may be notable comfortable in an ergonomic sense and thus, well suited for long term or sport-type wear. As such, a sweat-proof configuration as described may be of unique benefit, particularly where inductive recharge is to be employed.

In one embodiment, the support mechanisms **101**-**106** may even be configured to enhance cleanliness of supported pieces (e.g. **276**). For example, the mechanisms **101**-**106** may be outfitted with conventional UV, ionizing, germicidal ozone generating or other sanitizing capacity. Further, similar to a secured piece **276**, these mechanisms **101**-**106** may be covered with an easily cleanable polymer layer. Indeed, the organizer **100** of FIG. **1** may even be outfitted with its own wet wipe dispenser. Along these lines, the covering layer for the mechanisms **101**-**106** may be readily disposable and replaceable. Additionally, in another embodiment, the outer surface of the mechanisms **101**-**106** may be of a coefficient of friction that is greater than that of the underside of supported pieces **276**. Thus, as a user places the piece **276**, the underside thereof may, to a certain degree, be intentionally cleaned by the outer surface of a mechanism **101**-**106** during placement. The user is then able to later wipably clean the mechanism **101**-**106** or replace the disposable cover thereto as desired.

Referring now to FIGS. **4**A-**4**B, perspective and sectional views of an embodiment of a support mechanism **101** are depicted for accommodating wearable pieces (e.g. **276**). More specifically, FIG. **4**B is an enlarged partially sectional view of the mechanism **101** taken from **4**-**4** of FIG. **4**A and for accommodating a securing extension **210** of the earpiece **276** of FIG. **3**A.

With specific reference to FIG. **4**A, and added reference to FIG. **2**A, the support mechanism **101** is of the rod-shaped variety as noted above. In this particular embodiment, the mechanism **101** is also configured with pairing locations **275**, **280**. These locations **275**, **280** each include a pair of defined recesses **450** at which a pair of wearable communication pieces (e.g. **276**) may be accommodated between isolating structure **425** of the mechanism **101**. For example, pairs of wearable earpieces **276**, **281** may be positioned at these locations **275**, **280** of an organizer **100**. More specifically, as alluded to above, such earpieces **276**, **281** may be equipped with a securing extension **210** in the form of a stable, largely shape-retaining, wrap-around 'ear hook' (or ear support). This extension **210** may serve to secure an earpiece **276** at a user's ear when in use and also be well suited for flexible but secure placement at the support mechanism **101** when not in use.

Referring now to FIG. **4**B, an exploded partially sectional view of the support mechanism **101** taken from **4**-**4** of FIG. **4**A is shown. The mechanism **101** is configured to accommodate a discrete portion of the earpiece **276**, namely its securing extension **210**. That is, as the piece **276** is 'hooked' or hung about the mechanism **101** via movement of the extension **210** in the direction of arrow **475**, a charging device may be utilized for recharging of the earpiece **276**. More specifically, in the embodiment shown the charging device is an inductor **400** such as may render a magnetic field. Thus, a charge region **305** of the piece **276**, brought into the vicinity thereof (see arrow **475**), may attain recharge by way of its own internal inductor **500** configured to convert the magnetic field into usable current (see FIG. **5**A). As such, a functional transformer is rendered.

11

This type of electromagnetic field conversion for sake of battery recharge may be heat generating in nature due to the ferrite cores, coils and other features of the inductors **400**, **500** described below. Nevertheless, due to the configuration of the depicted piece **276**, heat sensitive casing components are safely displaced to a location (e.g. at **277** of FIG. **2**A), removed from the heat prone location of the charge region **305**, mechanism **101** and interfacing inductors **400**, **500** thereat (see also FIG. **5**A). Once more, as indicated further herein, the arcuate shape of the extension **210** may be of a tailored morphological matching to that of the outer surface of the mechanism **101**. Thus, a maximized interfacing and efficiency of inductive recharge may be attained. Indeed, the construction of the extension **210** may be flexibly conformal relative the mechanism **101** so as to support placement at different sized user ears as well as a tight, substantially maximized interfacing fit upon securing to the mechanism **101**, thereby even further enhancing efficiency of power transfer/recharge. Further, even when not recharging, a degree of magnetic interaction between the inductors **400**, **500** may be sufficient to enhance stability of the piece **276** in place at the mechanism **101**.

In certain embodiments, depending on the particular dimensions at the interface, shielding, charge levels and other factors, the recharging may take place in a slower fashion in contrast to a more conventional metal-based plug-in, for example. From a heat-safe perspective, relative casing **277** components this may be intentional as alluded to hereinabove (see FIG. **2**A). Nevertheless, such charging rates may be more than adequate for supplying a sufficient overnight full-recharge to such pieces **276**. That is, as a practical matter, a user is likely to remove pieces at least for sleep periods, as with eyewear and other apparel accessories. Thus, even where recharge is of an intentionally slower fashion, for example, to minimize heat, the relatively low power pieces may nevertheless acquire more than adequate recharge with conventional state of the art batteries available.

Additionally, the efficiency of the recharge may be enhanced where the physical interface between the earpiece **276** and the support mechanism **101** is maximized. For example, as noted above, where the securing extension **210** and the mechanism **101** are morphologically tailored in a substantially matchable fashion, the interfacing of the charge region **305** relative the underlying inductor **400** may be maximized. By way of more specific examples, a substantially matchable character may be displayed where the support mechanism **101** and the extension **210** physically share a substantially uninterrupted interface of more than about ¼ of an inch to upwards of an inch or more. Further, these features **101**, **210** may be of substantially similar radiuses, for example, where both are between about ½ an inch and two inches in radius.

The substantially matching morphological character of the noted features **101**, **210** relative one another may be attained in a conformal manner. For example, the extension **210** may be of a largely polymeric conformal supportive structure that is of a slightly smaller initial radius than the support mechanism **101**. However, it may be of an expansive character and configured to take on the substantially matching morphology upon interfacing with the slightly larger radiused support mechanism **101**. Indeed, in one embodiment, the mechanism **101** itself may include locations that compressibly or conformally receive the extension **210** so as to provide the substantially matching character in a biasing or spring-like fashion. For example, such compressibly retentive features may be readily incorporated into embodi-

12

ments of the support mechanism **101** as those depicted in FIG. **4**A detailed above and/or FIG. **5**A described further below.

With a substantially matching features **101**, **210** available for enhanced interfacing during recharge, heat commensurate with inductive recharging in particular may be kept at a minimum without significantly hampering efficient overnight charging. Thus, in combination with the utilization of a displaced casing **277**, an effective and practical manner of recharge may be achieved without measureable effects on, or impairment of, casing components (see also FIGS. **2**A, **8**A). With particular focus on the earpiece **276**, a wearable is provided that securely positions interchangeably between both the user and the support mechanism **101** with a similar level of security in either case. That is, the diameter of the mechanism **101** is likely to be similar to that of a human ear at the underside or 'concha' thereof. Further, from a surface-based standpoint, a substantially maximized amount of interfacing may be achieved for sake of recharge efficiency and casing component protection.

Continuing with reference to FIG. **4**B, the inductor **400** may be of conventional inductive coil-based construction with a protective layer **455** disposed thereabout which is of a polymer or other suitable material. Thus, in conjunction with the layer protected charge region **305**, a moisture and debris-resistant interface for recharging the earpiece **276** is provided. Once more, with added reference to FIG. **5**A, the extension **210** of the piece **276** is specifically located at a recess **450** of the support mechanism **101**. Thus, guided placement of the earpiece **276** about the inductor **400** and adjacent isolating structure **425** may be attained.

Referring now to FIGS. **5**A-**5**C, particular embodiments of inductive interfacing between coil-based inductors **400**, **500** of the support mechanism **101** and a corresponding extension **210** are detailed. More specifically, FIG. **5**A is a front sectional view of the support mechanism **101** with an internally disposed charging device in the form of a noted inductor **400**. Thus, an earpiece embodiment **276** such as that of FIG. **4**B may be accommodated for organized display and recharge. FIG. **5**B depicts a side cross-sectional view of an alternate embodiment of support mechanism **101** of uniform construction with elongated charging device **400** disposed therein. FIG. **5**C is a sectional view of an embodiment of underlying inductor **400**, **500** components so as to schematically represent an inductive field **501** and nature of such recharging.

With specific reference to FIG. **5**A, a front sectional view is depicted of this interfacing of internal coil-based inductors **400**, **500**. In this view, the securing extension **210** is only partially cross-sectional such that its underlying inductor **500** is shown covering over the support mechanism **101** there-below (though a more fully cross-sectional depiction is shown at FIG. **5**C). In the depiction of FIGS. **5**A-**5**C, one inductor **400** is the charging device provided via the support mechanism **101** whereas the other **500** is provided via the charge region **305** of the earpiece **276** (see FIG. **4**B).

In the embodiment of FIG. **5**A, the positioning of the securing extension **210** within the recess **450** is apparent. Once more, the surrounding isolating structure **425** may be of greater electrically insulating dielectric character as compared to layer materials of the protective layer **455** and/or the surface of the charge region **305** (see FIG. **4**B). Indeed, along these lines, in the embodiment of FIG. **5**A, internal inductors **400** of the support mechanism **101** may be of discrete construction for individual placement adjacent each

US 9,438,984 B1

**13**

recess **450** of the mechanism **101**. Thus, an efficient and isolated recharge may take place on an accommodated piece by piece basis.

In one embodiment, the inductors **400** of the support mechanism **101** may extend vertically into the body of the isolating structure **425**, with some degree of recess exposure, so as to increase the area of interface between the adjacent inductors **400**, **500**. Thus, the rate and degree of power transfer may be enhanced. Of course, as detailed below, alternative less discrete pairings of inductors **400**, **500** may also be utilized. Further, segregated recesses **450** may be utilized in conjunction with an elongated inductor **400**, such as the one depicted in the embodiment of FIG. **5**B, for example, for ease of use and/or manufacturability.

As indicated above, the positioning of the earpiece **276** is guided by the size and/or shape of the depicted recess **450**. Thus, in one embodiment, the dimensions and morphology of the recess **450** and the accommodated securing extension **210** may be configured in light of one another. That is, these features **450**, **210** may be configured with a key-like fitted matching for sake of interfacing. As such, incompatible pieces may be largely blocked from recharge or organized storage at the location of the recess **450**. Thus, in addition to a substantially matching interfacing, the advantage of a mechanically selective type of plug-in interfacing of piece **276** and recess **450** would be provided, without necessarily requiring the use of more traditional metal-based contacts. Thus, as noted above, exposure to moisture and other debris may remain of insignificant concern.

Continuing now with reference to FIG. **5**B a side cross-sectional view of an alternate embodiment of the support mechanism **101** is shown. In this embodiment, the mechanism **101** is of a smoother straight-line configuration without predefined segregated recesses **450** of any significant depth. Additionally, rather than utilize a plurality of more discrete inductors **400**, along the lines of the embodiment of FIG. **5**A, a single elongated version of an inductor **400** is disposed below the protective layer **455**. Thus, in this embodiment, less precise positioning of the piece **276** is required for sake of functional recharge interfacing. Similarly, akin to certain wireless inductive charging pads, the single elongated support mechanism **101** and rod-shaped inductor **400** may accommodate any practical number of wearable communication pieces **276**.

In the embodiment of FIG. **5**B, the internal elongated inductor **400** is positioned nearer the likely interface location of the support mechanism **101** (e.g. at its top, from where a piece **276** is likely to be hung). Thus, internal space **550** of the mechanism **101** is available for other functional components. For example, insulating material may be located in the space as an aid to minimizing overall heat buildup throughout a charging organizer **100**, such as the one depicted in FIG. **1**. As such, an accommodated piece **276** and heat sensitive components thereof may be even further safeguarded. Indeed, even in a single support mechanism **101** embodiment such insulating in the space **550** would be located between the inductor **400** and the heat sensitive component casing **277** therebelow (see FIG. **8**A).

Referring now to FIG. **5**C, a more fully cross-sectional depiction of a piece **276** accommodated at the support mechanism **101** is shown. In this view, the coil-based inductive recharge is depicted in a manner that schematically reveals the interaction between the inductors **400**, **500** during recharge. As a matter of orientation, polymeric material at the underside of the earpiece charge region **305** is apparent as well as at the outer surface of the mechanism protective layer **455**. However, at either side of these mate-

**14**

rial portions, are the interfacing inductors **400**, **500** for sake of recharge via wireless power transfer.

In the embodiment of FIG. **5**C, the support mechanism's inductor **400** is outfitted with a series of primary coils **525**, though more discrete, pairing location coils **525** may be utilized for embodiments such as those of FIG. **5**A. Similarly, the inductor **500** of the piece **276** is outfitted with a secondary coil **550**. Thus, upon securing at the support mechanism **101**, the secondary coil **550** is well positioned for wirelessly obtaining power (inductively imparted voltage) from the primary coils **525**.

The embodiment of FIG. **5**C depicts wireless power transfer to the piece **276** via a magnetically induced inductive field **501** generated by the primary coils **525** in detectable immediate proximity of the secondary coil **550**. A variety of different electronic architectural designs may be employed for generation of such an inductive field **501** from which a conventional secondary coil **550** may extract and transfer power. The electronic architectural design of FIG. **5**C is similar in construct to that detailed in U.S. Pat. No. 6,906,495. However, others may be utilized such as designs detailed in U.S. Pat. No. 7,239,110; US 2006/0043927; U.S. Pat. Nos. 7,109,602; 7,042,196; 6,005,304; 7,462,951; US 2007/0141860 and others. Yet, regardless of the particular design selected, a fundamental principle is employed whereby primary and secondary circuits (i.e. coils **525**, **550**) of a transformer may be separated by a short distance yet remain magnetically coupled for purposes of power transfer.

The primary coils **525** may be equipped with primary extensions **527** that are electronically coupled to circuitry within the support mechanism **101** and, for example ultimately to the control unit **150** of FIG. **1** for managed recharge as detailed herein. Thus, a conventional wall socket may serve as the source for the recharge on a near continuous basis, depending on management parameters of the control unit **150**. Similarly, a secondary extension **555** from the secondary coil **550** may deliver power for recharge to a battery within a component casing **277** (see FIG. **2**A).

Continuing with reference to FIG. **5**C, the field **501** may be generally considered 'near field'. That is the effectiveness of the field **501** may rapidly dissipate moving away from the primary coils **525**. Thus, concerns over dampening, diffusion, atmospheric absorption and other standard energy losses may be largely insignificant. Further, safety concerns may be minimized in this manner as well as through construction of the organizer **100** and management through the control unit **150**. For example, power transferable engagement may only be selectively activated only where a compatible piece **276** is in securable proximity of the mechanism **101**. Further, the organizer **100** itself may be of a shielded cabinet design as shown in FIG. **1** with a host of shielding available at cabinet doors **125**, drawers or other suitable locations.

In an embodiment such as that of FIG. **5**A, the shielding isolating dielectric structure **425** may provide a degree of collimating relative the field **501**. Furthermore, the induction itself may be of a resonant variety. That is, the primary coils **525** may be configured to 'tunnel' the field **501** at a particular frequency wheares the secondary coil **550** is configured to resonate at about the same frequency. Thus, efficiency of voltage transfer thereto may be enhanced.

As an alternative to induction as detailed hereinabove, radio wave transmission, microwave transmission and laser beaming may even be utilized. Once more, a more conventional, hard contact-based electrical power transfer may even be utilized as described below.

US 9,438,984 B1

15

16

Referring now to FIGS. **6**A and **6**B, a more traditional plug-in type of recharge embodiment is depicted. Specifically, FIG. **6**A depicts a side view of an embodiment a single ear earpiece **276** configured for electrical contact based recharge. That is, in contrast to the embodiment depicted in FIG. **3**A, an inductive type of charge region **305** is replaced with one that is a metal-based contact **605** such as copper. Further, while the securing extension **210** remains a suitable platform for the speaker **307** and/or an actuator **303**, it may also be of a more rigid construction and the contact **605** located at a side thereof. This may suit an embodiment where the contact **605** is of a less flexible construction. Additionally, placement of contacts **605** at the sides of the piece **276** may keep them open and less likely pressed over the user's ear on a near continuous basis during use. Thus, user perspiration and debris may be less of a factor in diminishing the overall life of the contact **605**.

As shown in FIG. **6**B, the piece **276** is plugged into the support mechanism **101** for recharge. More specifically, the contacts **605**, **606** at each side of the extension **210** are aligned with those **600**, **601** of the mechanism **101** akin to a traditional electrical plug-in. Thus, recharge of a battery within the casing **277** may be attained via conventional means (see FIG. **2**A).

Referring now to FIG. **7**, a flow-chart is depicted summarizing an embodiment of utilizing an organizer such as that of FIG. **1**, to accommodate and manage a plurality of wearable electronic, wireless communication or other pieces. Namely, as indicated at **720** and **730**, the organizer is provided along with apiece that is to be accommodated. Thus, as noted at **740**, a discrete portion of the piece may be placed at a support mechanism of the organizer, such as where a securing extension is used to secure a piece to a support mechanism as detailed hereinabove.

With pieces accommodated by the organizer, recharge may take place as indicated at **780**. However, a control unit of the organizer may also be utilized in managing and/or allowing recharge. For example, the compatibility of each accommodated piece may be confirmed in advance as indicated at **750**. In fact, with communicative capacity available between a processor of the control unit and an accommodated piece, a level check for "low power" or "no power" may also optionally take place in advance of recharging as indicated at **760**. Such a check may serve as a power savings aid. Further, as noted at **770**, recharge may be prevented altogether, where the accommodated piece is incompatible with the organizer, based on any given number of predetermined manufacturer settings. All in all, a uniquely intelligent manner of recharge is provided in terms of real time compatibility and power level checks for a heretofore unseen manner of recharge in terms of the morphological suspended engagement utilized.

Management of recharge may further entail protocols relating to a variety of factors and input. For example, the control unit **150** of FIG. **1** may be preprogrammed to monitor organizer heat and adjust recharge accordingly. Indeed, such monitoring may be on a support mechanism by support mechanism basis. Similarly, tracking and monitoring on a piece by piece basis may be undertaken so as to retain a historical record of recharge, for example to determine reliability of different piece types or brands.

Referring now to FIGS. **8**A and **8**B, alternate embodiments of organizers **800**, **801** are depicted which take on various artistic forms, including a sleek or modern look as shown in FIG. **8**A versus the 'tree-like' sculpting of FIG. **8**B. From a more functional standpoint however, the organizers **800**, **801** are provided as horizontal surface mounted units.

That is, as opposed to mounting on a wall or other vertical surface, the units **800**, **801** are configured for positioning at a horizontal surface **850** such as a bedside table, dresser or other suitable location. Indeed, the control unit **150** may be incorporated into a support base at the surface **850** for either embodiment, with a cord **155** provided for plugging into a standard wall socket. Further, the units **800**, **801** make use of rod-shaped support mechanisms **101**-**104**, much as the embodiment of FIG. **1**. However, given that the mechanisms **101**-**104** are more directly raised over the control unit **150**, as opposed to housed within a larger cabinet as in the embodiment of FIG. **1**, vertical extensions **825** may extend from the control unit **150**.

With particular reference to FIG. **8**A, the support mechanism **101** is of a single open variety. That is, an enclosed plurality of adjacent support mechanisms are not utilized as in the embodiment of FIG. **1**. Thus, the displaced component casing **277** of a secured piece **276** may advantageously avoid concentrated exposure to induction produced heat from any adjacent support mechanisms as well as any heat buildup within an enclosure. Once more, in this particular view, the above described displacement relative the depicted mechanism **101** is particularly apparent. Indeed, a substantial displacement (d) between the casing **277** and potential heat sensitive components thereof is shown relative the mechanism **101** and an inductor housed within the extension **210** (and/or the mechanism **101** thereunder). As detailed above, this may translate to a heat safe distance of at least about 1.5 inches, for example as facilitated by a distancing element **279**.

Continuing with reference to FIG. **8**A, two separate vertical extensions **825** extend from the base control unit **150** to supportively secure each end of the rod-shaped support mechanism **101**. This is done in such a manner that the mechanism **101** is largely closed-ended similar to the mechanisms **101**-**104** of the embodiment of FIG. **1**. So, for example, where a normally closed-loop piece **216**, such as the necklace type of FIG. **2**B, is to be stored at the organizer **800**, it's extension strap may preferably be unfastened and opened prior to placement about the mechanism **101** (just as would be the case prior to placement about a user's neck).

Of course, another support mechanism may be added to the base control unit **150** adjacent thereto. For example, the organizer **800** may take on the appearance of gymnastic-type uneven bars for sake of stair step presentation. In this manner a multi-level organizer **800** of support mechanisms **101** may be provided which are set apart from one another, with an offset and unencumbered manner of display for user accessibility of pieces.

Alternatively, the embodiment of FIG. **8**B reveals open-ended support mechanisms **101**-**104**. For example, a single central vertical extension **825** is provided from which the mechanisms **101**-**104** emerge in an open-ended fashion. Thus, placement of a necklace type piece **216** as depicted in FIG. **2**B may more directly involve the hanging of the piece **216** about the end of a support mechanism **101**-**104** without the requirement of unfastening and refastening the strap. Such placement more closely resembles the manner of securing the piece **216** to hook-shaped support mechanisms **105**, **106** depicted in FIG. **2**B. However, in contrast to the hook-shaped embodiments of FIG. **2**B, the embodiment of FIG. **8**B, affords additional footspace for several pieces per open-ended, rod-shaped support mechanisms **101**-**104**.

Of course, any number of different presentation and functional stylings may be utilized in combination when constructing an organizer **100**, **800**, **801**. Aside from being wall or horizontal surface mounted as indicated, support

US 9,438,984 B1

17                                                    18

mechanisms may be open-ended, closed-ended, rod-shaped, hook-shaped, or any practical combination thereof incorporated into a given organizer. Once more, accommodated pieces may be of any user compatible morphology. So long as the organizer is equipped with a support mechanism(s) having capacity to support discrete securing extensions of wearable electronic or communication pieces, organizational, recharging, and other advantages heretofore unseen may be achieved.

Embodiments described hereinabove provide an organizational system directed at wearable electronic pieces. These may include wireless jewelry or other communicative type embodiments, often referred to as "wearables". Embodiments of the organizer allow for a growing accessory collection may be relieved of the requirement for a dedicated recharger with each and every piece that is added to the collection. As a result, some of the same un-encumbering, freedom-of-movement, type of benefits to wireless technology that are appreciated during use and wear may be extended to time periods when such pieces are not being worn. Indeed, the benefit to such organization is particularly noticeable for a growing collection of wearable wireless pieces which, unlike conventional jewelry, face the added circumstance of a growing jumbled mess of wires in absence of such an organizer.

The preceding description has been presented with reference to presently preferred embodiments. Persons skilled in the art and technology to which these embodiments pertain will appreciate that alterations and changes in the described structures and methods of operation may be practiced without meaningfully departing from the principle, and scope of these embodiments. For example, embodiments described herein detail certain types of mechanisms with open or closed-ended, rod or hook-shaped supports, that are configured to directly support a discrete portion of a wearable wireless communication piece. However, in alternate embodiments a small pocket, flexible loop or other form of sustaining retainer shape may be utilized for direct support of a discrete securing extension of such pieces. Furthermore, with added reference to FIGS. **9** and **10**, as a matter of further enhancing ergonomics, in an ear piece embodiment **276** the speaker **307** may intentionally be kept off of the user's ear **977** with a flexible speaker support **926** (e.g. with a user-defined separation **900** of up to about 0.5 inches maintained between the speaker **307** and the user's ear **977** when worn). In such an embodiment, the speaker **307** may be equipped with hypersonic sound delivery capacity to direct the sound across the separation **900**. The foregoing description should not be read as pertaining only to the precise structures described and shown in the accompanying drawings, but rather should be read as consistent with and as support for the following claims, which are to have their fullest and fairest scope.

I claim:

**1**. An ergonomic single ear ear wear piece of enhanced comfort for long-term wear, the piece comprising:
   a hook shaped securing extension for positioning behind a user's ear and securing the piece thereat;
   an actuator at a location of said extension to serve as a physically controlling interface for the user;
   a speaker assembly for delivering sound to the user's ear, said speaker assembly supported by said extension from a location at one side of the actuator location;
   a distancing element coupling to said extension from a location at an opposite side of the actuator location; and
   a casing coupled to said distancing element and of a bulk for housing a plurality of electronic components, the

bulk exceeding that of said extension and said distancing element, said distancing element to displace said casing to a location between the ear and a neckline of the user when the piece is secured.

**2**. The ear wear piece of claim **1** wherein the plurality of electronic components includes one of a focused microphone and a rechargeable battery.

**3**. The ear wear piece of claim **2** wherein the rechargeable battery is inductively rechargeable.

**4**. The ear wear piece of claim **1** wherein said distancing element is between about 0.25 inches and about 5.0 inches in length and less than about 0.25 inches wide.

**5**. The ear wear piece of claim **1** wherein said securing extension is less than about 0.25 inches in width.

**6**. The ear wear piece of claim **1** wherein said securing extension is of a moisture resistant construction with an underside portion morphologically tailored to substantially match a surface of the position behind the ear at a concha thereof when the piece is secured.

**7**. The ear wear piece of claim **1** wherein the speaker location and the actuator location of said securing extension are at a front portion of said extension and the opposite side of said securing extension for the coupling of said distancing element is at a back portion of said extension.

**8**. The ear wear piece of claim **1** wherein the location of said securing extension for supporting said speaker assembly is configured to maintain a separation of up to about 0.5 inches between said speaker assembly and the user's ear when the piece is secured.

**9**. The ear wear piece of claim **8** wherein said speaker assembly is equipped with hypersonic sound delivery capacity to direct the sound across the separation to the user's ear during the delivering of the sound.

**10**. An ergonomic wearable electronic ear wear piece of enhanced comfort for long-term wear, the piece comprising:
   at least one hook shaped securing extension for positioning behind an ear of a user to at least partially secure the piece thereat;
   at least one actuator accommodated by said extension, said actuator to serve as a physically controlling interface for the user;
   a speaker assembly accommodated by said extension for delivering sound to the user's ear;
   a distancing element coupled to said extension; and
   a casing coupled to said distancing element and of a bulk for housing a plurality of electronic components, the bulk exceeding that of said extension and said distancing element, said distancing element to locate said casing away from the ear to a position exclusively between the ear and a neckline of the user when the piece is at least partially secured.

**11**. The wearable piece of claim **10** wherein the plurality of electronic components includes an inductively rechargeable battery.

**12**. The wearable piece of claim **10** wherein said at least one securing extension is less than about 0.25 inches in width and said distancing element is between about 0.25 inches and about 5.0 inches in length and less than about 0.25 inches wide.

**13**. The wearable piece of claim **1** wherein said speaker assembly is accommodated by said extension from a first location thereof, said actuator is accommodated by said extension at a second location thereof and said distancing element is coupled to a third location of said extension, the second location being at a position between the first and third locations along said extension.

US 9,438,984 B1

19

20

**14**. The wearable piece of claim **13** wherein the first and second locations are substantially at a front of said extension and the third location is substantially at the back of said extension.

**15**. The wearable piece of claim **13** wherein the first location is configured to maintain a separation between said speaker assembly and the user's ear when the piece is secured, said speaker assembly equipped with hypersonic sound delivery capacity to direct the sound across the separation to the ear during the delivering of the sound.

**16**. A method of utilizing an ergonomic wearable electronic ear wear piece of enhanced comfort for long-term wear, the method comprising:

at least partially securing the piece at a user's ear with at least one hook shaped securing extension being positioned at least partially behind the ear;

manipulating an actuator at a front of the extension to electronically communicate with one of a plurality of electronic components in a casing coupling to the extension, the casing of a bulk exceeding that of the securing extension and a distancing element that provides the coupling and positions the casing at a location away from the ear and exclusively between the ear and a neckline of the user when the piece is secured; and

delivering sound to the user's ear with a speaker assembly accommodated by the securing extension.

**17**. The method of claim **16** further comprising inductively charging a battery of the plurality of electronic components prior to said securing.

**18**. The method of claim **16** further comprising maintaining a user-defined separation between the speaker assembly and the user's ear, said delivering further comprising employing hypersonic sound delivery capacity of the speaker assembly to direct the sound across the separation.

**19**. The method of claim **17** wherein said delivering further comprises delivering stereo sound by directing sound to another of the user's ears with another speaker assembly accommodated by another hook shaped securing extension positioned at least partially behind the other ear of the user.

**20**. The method of claim **19** wherein the other hook shaped securing extension is coupled to another distancing element for coupling to one of the casing and another separate casing accommodating another plurality of electronic components, the other separate casing of a bulk exceeding that of the other securing extension and the other distancing element, the other distancing element positioning the other casing at a location away from the ear and exclusively between the ear and a neckline of the user.

*   *   *   *   *